PEARL FERGUSON, Appellant, v. ORVEL LONG, W. C. FERGUSON and SUSAN E. ANTLE—107 S. W. (2d) 7.

Division One, June 30, 1937.

*Kelley & Tatum* for appellant.

*C. M. Landis* and *H. A. Gardner* for respondents.

FERGUSON, C.—Plaintiff claiming to be the owner, in fee, of an undivided one-half interest in 254 acres of land, situate in Barry

County, brought this action for partition in the circuit court of that county. Judgment was entered denying her prayer for partition and plaintiff appealed. ▇ It is apparent that the judgment is based upon a finding by the court that plaintiff did not have title to an undivided one-half interest in the land as alleged in her petition. The statement of the controversy, which we shall presently make, will, we think, demonstrate that "title to real estate" is "involved" so as to give us jurisdiction. [Sec. 12, Art. VI, Constitution of Missouri.]

Plaintiff's husband, George M. Ferguson, a resident of Barry County, died, intestate, "without any child or other descendants in being, capable of inheriting." [Sec. 325, R. S. 1929.] He left surviving him as all and the only persons entitled to an interest in his estate the plaintiff, his widow, and W. C. Ferguson, J. E. Ferguson, brothers, and Susan E. Antle, a sister.

Plaintiff's petition alleged that she was the owner of an undivided one-half interest in the lands described, in that as the widow of George M. Ferguson she had "elected (under the provisions of Sec. 329, R. S. 1929) to take a one-half interest in the real estate of the said George M. Ferguson, deceased, in lieu of dower;" that the 1/6 interest of J. E. Ferguson therein had been purchased at an execution sale by one Orvel Long who thereby became the owner thereof; that Susan E. Antle and W. C. Ferguson "are each the owners of a 1/6 interest in said lands;" that "the personal property belonging to the estate . . . and not sought to be partitioned is more than sufficient to pay all claims and demands against said estate;" that partition in kind cannot be made without great prejudice to the owners of said lands; and prays, "that said lands be ordered sold and the proceeds divided among said parties in proportion to their respective interests." Orvel Long, Susan E. Antle and W. C. Ferguson were made defendants. Long, who was prominently identified with plaintiff's case, as will later appear, did not file an answer or make any contest. Defendants Susan E. Antle and W. C. Ferguson filed a joint answer which denied, that plaintiff was the owner of an undivided one-half interest in the lands by virtue of her alleged election, and, asserted, that plaintiff had not made an election in the manner and within the time prescribed and required by statute; "that the only interest plaintiff has" in the lands "is a life estate in one-third in value of said lands;" and that plaintiff "has no cause of action, except an action to have her dower assigned under Section 318, R. S. 1929."

The sole question is, Did the plaintiff make an effectual election in conformity with the statutory requirements? If so she became entitled to and the owner of a one-half interest, in fee, in the lands. Our statute, Section 325, Revised Statutes 1929, provides that; "When the husband shall die without any child or other descendants

in being, capable of inheriting, his widow shall be entitled: First, . . .; second, to one-half of the real and personal estate belonging to the husband at the time of his death, absolutely, subject to the payment of the husband's debts." However, this right given to the widow is dependent upon her election to take the interest specified in lieu of dower. The election statute (Sec. 329, R. S. 1929) provides, that the widow must make such election by a "declaration, in writing, acknowledged before some officer authorized to take the acknowledgment of deeds, and filed in the office of the clerk of the court in which letters testamentary or of administration shall have been granted, within twelve months after the first publication of the notice of granting of the same; and such declaration shall also be filed in the recorder's office of the county in which letters testamentary or of administration were granted within twelve months after the first publication of notice of granting of the same, otherwise she (the widow) shall be endowed under the provisions of the preceding sections of this article," that is, a dower interest as defined by preceding sections of the article.

Letters of administration were granted to plaintiff by the Probate Court of Barry County, on October 1, 1932, and first publication thereof was made October 5, 1932. On August 26, 1933, plaintiff appeared before Glenn Reese, clerk of the Probate Court of Barry County, and duly acknowledged a written declaration to take "one-half of the real and personal estate belonging to my said husband at the time of his death, absolutely, subject to the payment of his debts, in lieu of dower," etc. No question is made as to form of this instrument, which plaintiff introduced in evidence. The instrument bears an endorsement showing that it was timely filed in the office of the clerk of the Probate Court of Barry County on September 1, 1933. On December 21, 1933, more than fourteen months after the first publication of notice of the granting of letters of administration, Orvel Long, apparently acting for plaintiff, caused the declaration on file in the office of the probate clerk to be filed in the recorder's office of Barry County. This of course was not a compliance with the provision of the statute requiring that such declaration "be filed in the recorder's office . . . within twelve months after the first publication of notice" of the granting of letters of administration and is of no avail to plaintiff. Plaintiff, however, does not rely upon this filing.

As compliance with the requirement as to filing in the recorder's office plaintiff's evidence, which consists of the testimony of Long and herself, is; that in August, 1933, plaintiff and Long consulted attorneys at Pineville (in McDonald County) and were advised of her right of election; that she and Long returned to her home in Barry County (Long and his family "lived with plaintiff," having "moved in right after" her husband's death); that later the Pine-

ville attorneys "prepared an election and mailed it" to Long with a letter of "instructions," the letter was not produced, Long said, "I don't believe I have it;" that "two papers" were enclosed with the letter; that the "two papers" were "the same," duplicates; that on September 1, 1933, plaintiff and Long took the two papers to the probate office of Barry County where and when plaintiff signed and acknowledged both papers before Mrs. Reese, clerk of the probate court, and at that time filed one of them in that office. This is the declaration in evidence, heretofore mentioned. We now undertake a recital of the testimony of plaintiff and Long as to an alleged filing, in the recorders office, of the other paper, a purported duplicate of the declaration filed in the office of the clerk of the probate court. Having acknowledged the duplicate declarations as aforesaid and filed one in the probate office, they say that immediately thereafter, and on the same day, the following occurred. Pearl Ferguson, plaintiff: "We took it (the second declaration) to the recorder's office to have it recorded and she (the deputy recorder) was busy, and we were in a hurry, so we laid it down and told her we would pay the bill when we came back, as we had had other papers filed and charged." Orvel Long: "We took it to the recorder's office and this girl (the deputy recorder) was busy . . . a man was looking over the books with her . . . I do not know who he was . . . there was no one else in the room . . . we told this girl to put it on file . . . we told her to put that on record and we would be back and pay her and she said 'all right' . . . I laid it down and left it lying there on the book." Neither plaintiff nor Long returned to the recorder's office to pay the recorder's fee but they say that some time in the following December, more than three months later, they found out that the declaration had not been recorded in the recorder's office whereupon they went there to investigate. The lady deputy recorder was alone in the office. Their testimony about this occasion is vague. Plaintiff says merely that Long "looked at the recorder's book and found out himself" that no declaration was of record. She says Long "did not talk to the girl or ask her anything" except "tell her he wanted to see the record and she got it for him." It seems at this time neither plaintiff nor Long made any inquiries of the lady deputy, a Miss Goosetree, nor did they make any claim that they had left the declaration in that office on September 1, or at any other time, first having called her attention thereto, nor did they in any way seek to refresh her memory as to the alleged incident or request a search be made. Having ascertained that no declaration of election by plaintiff was of record there, Long thereafter directed Mrs. Reese, clerk of the probate court, to have the declaration on file in her office recorded in the recorder's office which, as noted, was done, the date of filing in the recorder's office being December 21,

1933. The recorder and Miss Goosetree, the lady deputy to whom plaintiff and Long referred in their testimony, both testified that they had no knowledge whatever of such instrument coming to or being in that office or being left there prior to the filing on December 21, by Mrs. Reese. Miss Goosetree recalled no such incident as that related by plaintiff and Long and says they did not leave such instrument in that office, with her, to be filed. Mrs. Reese, the clerk of the probate court, who, under date of August 26, 1933, took plaintiff's acknowledgment to the declaration filed in the probate office does not recall taking plaintiff's acknowledgment to any other declaration.

In Grubbs v. Cones, 57 Mo. 83, plaintiff's motion to correct an endorsement of the filing on the account in a mechanics' lien case, so that the date thereof would read March 26 instead of March 25, as same was by mistake endorsed by the clerk of the court, was sustained. This court said: "The endorsement though required to be made by the clerk when he received a paper, does not constitute the filing of the same. *The filing is the actual delivery of the paper to the clerk without regard to any action that he may take thereon.* If the clerk commits a clerical error, or makes a mistake in reference to the time at which he received the paper, that will not make any difference. He may endorse upon it the wrong date, or an impossible date, and still the real date of the filing will be the same." This case has been cited many times by our appellate courts and the general rule announced has been followed. One question involved in Landis v. Hawkins, 290 Mo. 163, 234 S. W. 827, was the timely filing of a widow's declaration of election in the probate office. This court said: "It was filed when it was lodged in the proper office with the intention that it should become operative as an election under the statute. Nor does the fact that Judge Brace (judge of the probate court) thereafter, by mistake, endorsed a wrong date of filing on the paper preclude plaintiff from showing the true date." See, also, St. Louis Law Printing Co. v. Aufderheide, 226 Mo. App. 680, 45 S. W. (2d) 543 (filing of a motion for a new trial); Dorrance v. Dorrance, 242 Mo. 625, 148 S. W. 94 (lodgment of amended petition with clerk of the court); State ex rel. Chester, Perryville and Ste. Genevieve Ry. Co. v. Turner, 177 Mo. App. 454, 163 S. W. 951, and same case, 270 Mo. 49, 191 S. W. 987 (timely delivery to and receipt by clerk of the court of a bill of exceptions but failure to endorse same as filed). As to the requirement that a party offering an instrument for filing perform same required condition precedent, as tendering fees, and that such condition may be waived by the officer, see State v. Pieski, 248 Mo. 715, 719, 154 S. W. 747, 748. Merely leaving or lodging the instrument in the office in which it is to be filed without the knowledge of the officer authorized to receive it would not of course constitute a filing within the meaning of that

term. It may be said to be the general rule that the deposit or lodgment of the instrument for filing, in the proper office and its acceptance for that purpose by the proper officer constitutes a filing within the meaning of the law "without regard to any action" such officer "may take" or fail to take thereon. [Grubbs v. Cones, supra.] However, in the foregoing cases, and others that might be cited, the instrument or document involved was in existence; there was no question about it having actually been lodged with and received by the proper officer; and either the officer had failed to endorse the filing thereon or had by mistake endorsed an incorrect date. The court held that it was competent in such instances to show the actual time or date of the filing and upon satisfactory proof thereof the instrument would be considered filed as of that time, and in those instances where an incorrect date had been endorsed such endorsement would be corrected to conform to the fact.

Invoking and seeking to apply the foregoing rules of law in the present case plaintiff, as appellant, says, "the only question before the court" on this appeal "is a question of law . . . was her (plaintiff's) action in depositing the election paper on the desk of the recorder with a request that it be filed and recorded, a filing of the instrument?" It is apparent that this view assumes and presupposes as uncontroverted, undisputed and established facts, the existence, execution and acknowledgment of a second or duplicate declaration and the deposit thereof in the office of the recorder for filing and record, in the manner related by plaintiff and Long, with the knowledge and acceptance thereof by the deputy recorder, and a waiver of tender or prepayment of fees, by her alleged reply of "all right" when Long purportedly laid the paper on a book and said, "Put that on record" and that they would be back and pay her. Until the foregoing facts were established no question of the legal effect of such facts is presented.

Plaintiff claimed that she had complied with the requirements of the election statute and thereby acquired the legal right which she asserts as the basis of this action. The statute is mandatory as to what shall be done in the matter of an election (McLain v. Mercantile Trust Co., 292 Mo. 114, 122, 237 S. W. 506, 508), and a court of equity cannot dispense with any of the requirements of the statute, excuse failure to comply therewith, or extend the time for filing specified by the statute. [Allen v. Hartnett, 116 Mo. 278, 287, 22 S. W. 717, 719.] Nor do the pleadings herein invoke equitable principles or raise issues of equitable cognizance. This is therefore an action at law and no equitable matter is involved. A jury was waived, no declarations of law were requested, and the issues of fact in the case were tried and submitted to the court.

It will be recalled that the attorneys who purportedly prepared two duplicate copies of the declaration and mailed same with

a letter of instruction to Long did not testify; the letter was not produced or accounted for nor its content shown; the acknowledgment to the declaration admittedly timely filed in the probate office was of a date (August 26, 1933), five days prior to the day plaintiff and Long say she acknowledged the two copies and on the same day filed one in the probate office and lodged the other in the recorder's office; the declaration filed in the probate office was endorsed as filed of date of September 1, when they say they filed it there and deposited the other in the recorder's office; the clerk of the probate court, who plaintiff and Long say took plaintiff's acknowledgment to both copies, says she cannot recall taking plaintiff's acknowledgment to any declaration other than the one filed in that office; the circumstances surrounding the lodgment of the declaration in the recorder's office, as related by the parties most interested, are to say the least somewhat unusual; when plaintiff and Long went to the recorder's office in December, it is significant that they made no claim that they had left the declaration there with directions to the deputy recorder to file and record same, they apparently made no mention of the alleged events of September 1, and neither sought to recall such happening to the memory of the deputy recorder nor to have a search instituted for the instrument; the recorder and the deputy recorder testify positively that they never saw such instrument, nor had any knowledge of it coming to that office, until the clerk of the probate court, at Long's direction, filed the declaration, which had been on file in the probate office, in the recorder's office on December 21; the deputy recorder, in effect, denies that any such happening as that related by plaintiff and Long, when they say they left the declaration in the recorder's office on September 1, occurred. A reading of the testimony of plaintiff and Long reveals significant discrepancies and inconsistencies as well as the recital of some rather unusual circumstances. We may here appropriately observe that the credibility of the witnesses was for the trial court as the trier of fact.

We think it must appear that there was both direct and circumstantial evidence tending to controvert or contradict the essential features of the testimony of plaintiff and Long. There being a substantial conflict in the evidence relating to the essential facts upon which plaintiff relies to establish her case, the credibility of the witnesses, the weight of the evidence, and the finding thereon was peculiarly and exclusively the province of the trial court as the trier of fact, and the trial court by its finding having resolved the issues of fact against plaintiff we are bound by that finding. [Busby v. Self, 284 Mo. 206, 223 S. W. 729; Stewart v. Stewart (Mo.), 262 S. W. 1016; Phillips v. Dovil, 298 Mo. 186, 250 S. W. 408; State ex inf. Thompson v. Bright, 298 Mo. 335, 250 S. W. 599.]

It appears, by a stipulation filed May 6, 1937, that since the appeal herein, Mrs. Pearl Ferguson, the plaintiff, has died and that by

stipulation the cause was revived here. We have, however, for convenience referred to the original plaintiff as appellant.

The judgment of the trial court should be affirmed. It is so ordered. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.